United States District Court
Southern District of Texas
**ENTERED**
December 18, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL RAY WEST, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-170 |
| | § | |
| SHARON RUIZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND TO DENY PLAINTIFF'S MOTION FOR AN INJUNCTION**

Plaintiff Michael Ray West, proceeding *pro se* and *in forma pauperis*, has filed this prisoner civil rights complaint pursuant to 42 U.S.C. §1983 in which he asserts Eighth Amendment claims of deliberate indifference. Pending before the Court are the following: (1) a Motion for Summary Judgment, filed by Defendants Felicia-Ana Antu, Vicki Crumbliss, Mary Snyder, Erick Echavarry, Emily Carrizales, Donna Pfannstiel, and Jose Chapa (D.E. 48); and (2) Plaintiff's Motion for an Injunction (D.E. 60). For the reasons stated herein, it is respectfully recommended that the Court grant Defendants' summary judgment motion and deny Plaintiff's motion.

**I.    JURISDICTION**

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.

## II.    PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is presently housed at the Telford Unit in New Boston, Texas. The facts giving rise to Plaintiff's claims in this case occurred in connection with Plaintiff's former assignment to the McConnell Unit in Beeville, Texas.

Plaintiff named the following McConnell Unit officials in his Original Complaint: (1) Grievance Officer Sharon Ruiz; (2) Practice Manager Rudy A. Martisek; (3) Practice Manager Kendra Long; (4) Licensed Vocational Nurse (LVN) Felicia-Ana Antu; (5) LVN Vicky S. Crumbliss; (6) Registered Nurse (RN) Mary B. Snyder; (7) Family Nurse Practitioner (FNP) Angela Rodriguez; (8) Physician Assistant (PA) Erick Echavarry; (9) RN Emily Carrizales; (10) LVN Donna Pfannstiel; (11) RN Jose A. Chapa; (12) Grievance Officer Jessica Garcia; (13) Practice Manager Tanya Lawson; and (14) Grievance Officer Cecilia R. Selzler. (D.E. 1). Plaintiff claims that Defendants' repeated failure to provide him with adequate medical care following head injuries incurred on June 7, 2016 and August 8, 2016, amounts to deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights.

Because Plaintiff's allegations in his Original Complaint were insufficient, the undersigned directed Plaintiff to file an amended complaint and set forth more specific allegations against each named defendant. Plaintiff filed his Amended Complaint on July 13, 2018. (D.E. 8). On July 24, 2018, he filed a Second Amended Complaint (D.E. 10) along with a pleading entitled "Jurisdiction and Venue" (D.E. 13). The undersigned construes these pleadings together as Plaintiff's second amended complaint and the

2 / 22

operative pleading in this case. Plaintiff sues the same fourteen defendants in his second amended complaint in their individual capacity only.  He seeks monetary relief.

On August 28, 2018, the undersigned issued a Memorandum and Recommendation (M&R), recommending that Plaintiff's deliberate indifference claims be retained against Defendants Antu, Crumbliss, Snyder, Carrizales, Pfannstiel, Chapa, Rodriguez, and Echavarry in their individual capacities.  (D.E. 19).  The undersigned further recommended that Plaintiff's claims against the remaining defendants be dismissed with prejudice for failure to state a claim and/or as frivolous.

Consequently, the undersigned ordered service on Defendants Antu, Crumbliss, Snyder, Carrizales, Pfannstiel, Chapa, Rodriguez, and Echavarry.  (D.E. 20).  With the exception of Defendant Rodriguez, these defendants filed their answer on October 12, 2018.  (D.E. 29).  The Texas Attorney General's Office advised the Court that Defendant Rodriguez is no longer employed with the University of Texas Medical Branch (UTMB).  (D.E. 30).  The undersigned subsequently ordered service upon Defendant Rodriguez at her last known address which was provided by the Attorney General.  (D.E. 33).  Court records, however, do not reflect whether service was ever executed on Defendant Rodriguez.

On May 29, 2019, Senior District Judge Hilda G. Tagle adopted the M&R in its entirety.  (D.E. 45).  On June 21, 2019, Defendants Antu, Crumbliss, Snyder, Carrizales, Pfannstiel, Chapa, and Echavarry (collectively referred to herein as "Defendants") filed their Motion for Summary Judgment.  (D.E. 48).  After being granted several extensions of time, Plaintiff had until November 8, 2019, to file a response to Defendants' summary

judgment motion.  (D.E. 52, 56, 59).  Plaintiff, however, has not filed a response and has instead filed a Motion for an Injunction (D.E. 60).

## III.   MOTION FOR AN INJUNCTION

By way of background, the undersigned directed in a scheduling order that: (1) discovery in this case expired on June 7, 2019; and (2) dispositive motions were due to be filed on or before June 21, 2019. (D.E. 39). Defendants filed their summary judgment motion in a timely fashion. (D.E. 48). Plaintiff subsequently sought extensions of time to respond to the summary judgment motion because his legal materials had been confiscated at a unit where he was previously housed and he had not yet received his legal materials at the unit where he was confined.  The undersigned ultimately granted Plaintiff until November 8, 2019 to file a response to the summary judgment motion. (D.E. 52, 56, 59).

Plaintiff also requested an extension of time to conduct discovery and to amend the scheduling order to conduct discovery. (D.E. 57, 58). He stated that, when he finally received his legal materials, the discovery materials that he had previously received from Defendants had been removed from his personal property items. (D.E. 57, p. 2; D.E. 58). Without this discovery evidence, Plaintiff contended that he cannot adequately respond to the pending summary judgment motion. (D.E. 57, p. 2; D.E. 58). The undersigned determined that Plaintiff's motions to extend discovery and amend the discovery order were without merit because: (1) he sought such relief well after the discovery period had expired on June 7, 2019; and (2) he failed to identify any of the missing discovery items

or explain why such items would be necessary to oppose the summary judgment motion. (D.E. 59).

Plaintiff now moves the court for injunctive relief.  (D.E. 60).  Plaintiff states that, on several days between August 21, 2019 and September 27, 2019, prison officials at the Telford Unit removed Plaintiff's mail containing certain videotape evidence and effectively blocked it from being mailed out to various legal departments and media outlets.  (D.E. 60, pp. 1-4).  Plaintiff seeks injunctive relief with respect to the denial of access to courts and to obtain counsel in this case.  (D.E. 60, pp. 4-5).  He specifically asks the Court to stop prison officials at the Telford Unit from blocking his mail.  (D.E. 60, pp. 5-6).

In order to obtain a preliminary injunction under Federal Rule of Civil Procedure 65, the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Texans for Free Enterprise v. Texas Ethics Com'n*, 732 F.3d 535, 536-37 (5th Cir. 2013).  Injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance.  *Sepulvado v. Jindal,* 729 F.3d 413, 417 (5th Cir. 2013) (internal citations and quotations omitted).  Plaintiff must carry the burden as to all four elements before a preliminary injunction may be considered.  *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted).

Plaintiff fails to show a substantial likelihood of success on the merit of his underlying claims.   As discussed below, Plaintiff's deliberate indifference claims are subject to dismissal on the alternative grounds that: (1) he failed to exhaust administrative remedies; and (2) Defendants are entitled to qualified immunity.   Plaintiff provides nothing to suggest how the videotape evidence blocked by prison officials at the Telford Unit would be necessary to oppose the summary judgment motion.[1] Plaintiff otherwise has failed to satisfy any other element of the test for establishing preliminary injunctive relief.   Accordingly, the undersigned respectfully recommends that Plaintiff's Motion for an Injunction (D.E. 60) be denied.

## IV.   SUMMARY JUDGMENT EVIDENCE

Defendants offer the following summary judgment evidence:

Exh. A:   Affidavit of Glenda Adams with attached exhibits (D.E. 48-1).

Exh. B:   Plaintiff's Relevant Grievance Records (D.E. 48-2.

Exh. C:   Relevant Portions of the TDCJ Orientation Handbook (D.E. 48-3).

While not submitting any evidence, Plaintiff's verified second amended complaint (D.E. 10, 13) serves as competent summary judgment evidence.   *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017).   Like other parts of the record, Plaintiff's verified complaint must satisfy Federal Rule of Civil Procedure 56(c) in order to be considered at summary judgment.   *See Mengele v. AT&T Servs. Inc.*,

---

[1] While not expressly stated, Plaintiff appears to seek additional time to conduct discovery by obtaining counsel. However, as stated in the undersigned's October 19, 2019 Order, the discovery period has long since expired.

No. 3:15-cv-3934, 2017 WL 3835871, at *3 (N.D. Tex. Aug. 9, 2017) ("[T]he verified complaint and sworn interrogatory answers of the *pro se* litigant can be considered as summary judgment evidence *to the extent that such pleadings comport with the requirements of current Rule 56(c)*.") (emphasis added) (citations omitted). The undersigned, therefore, will not consider parts of Plaintiff's verified amended complaint that are not made on personal knowledge or that would be inadmissible in evidence. *See* Fed. R. Civ. P. 56(c)(4). Accordingly, the competent summary judgment evidence establishes the following:

### A.   Plaintiff's Evidence (Verified Second Amended Complaint)

On June 7, 2016, Plaintiff suffered a head injury after which he requested medical attention. On June 28, 2016, LVN Ana-Antu provided Plaintiff with inadequate care for his head injury when she falsely reported Plaintiff's medical condition, provided the RN with incorrect information regarding Plaintiff's serious medical condition, and failed to provide the proper medications for Plaintiff's head injury.

On July 4, 2016, LVN Crumbliss and RN Snyder provided Plaintiff with inadequate care for his head injury when they disregarded the facts of Plaintiff's serious injury and failed to consult with the medical provider for the purposes of prescribing him pain medication and ordering an x-ray. According to Plaintiff, the actions of these defendants caused him ongoing pain and emotional suffering.

On July 19, 2016, Plaintiff informed PA Echavarry and RN Carrizales that he was in pain, that he could not sleep, and that his pain medications were not helping him. Six days later, these two defendants deprived him of the right to medical care by

documenting in Plaintiff's medical records that Plaintiff should not be rescheduled for a medical appointment.

On August 16, 2016, RN Chapa and LVN Pfannstiel documented in Plaintiff's medical records that Plaintiff had harmed himself on August 8, 2016 by hitting his head against the wall and then requesting medical treatment.  However, these defendants failed to provide Plaintiff with any treatment for his head injury such as ordering any follow-up care, ensuring adequate medication would be prescribed, and referring Plaintiff to a medical provider or head specialist.

### B.  Defendants' Evidence

#### (1)  Grievance Records

Defendants have submitted numerous grievances lodged by Plaintiff at the McConnell Unit between January 1, 2016 and December 31, 2017.  (D.E. 48-2).  In many of these grievances, Plaintiff complains about the care he received by both mental health services and the medical department in connection with his head injuries.  His grievances include complaints about the lack of adequate medical care afforded to Plaintiff by Defendants.   All of the grievances filed by Plaintiff were Step 1 grievances.  (D.E. 48-2).

#### (2)  Medical Records

Plaintiff is a 58-year-old male who suffers from hypertension, hyperlipidemia, as well as "antisocial personality disorder."  (D.E. 48-1, p. 3).  Plaintiff banged his head against a wall on June 7, 2016, August 8, 2016, January 8, 2017, and April 6, 2017.  (D.E. 48-1, p. 4).  Examination of Plaintiff after each incident revealed no objective evidence of physical injury.  (D.E. 48-1, p. 4).

On June 27, 2016, Plaintiff submitted a sick call request complaining of headaches and a pain in his head.  (D.E. 48-1, p. 71).  Plaintiff was seen by LVN Antu the next day.  (D.E. 48-1, pp. 5, 72-73).  Plaintiff stated that, while he had a headache the day before, he did not have a headache at the time of his examination.  (D.E. 48-1, p. 72).  After finding nothing remarkable and consulting with the charged nurse, LVN Antu released Plaintiff with instructions "to continue to drink plenty of fluids and notify nursing if he should develop the problem again."  (D.E. 48-1, p. 72).  At the time LVN Antu examined Plaintiff, he had a current and active prescription for the pain medication Naproxen.  (D.E. 48-1, p. 5).

On July 1, 2016, Plaintiff submitted a sick call request claiming he was not receiving adequate care for his head injury.  (D.E. 48-1, p. 75).  On July 4, 2016, LVN Crumbliss thoroughly examined Plaintiff and found no significant abnormalities.  (D.E. 48-1, p. 76-83).  After consulting with RN Snyder, it was determined that no treatment was indicated at that time.  (D.E. 48-1, p. 81).  The nursing notes revealed that Plaintiff had been referred to both a medical provider and mental health provider.  (D.E. 48-1, p. 81).

On July 5, 2016, the mental health provider determined that Plaintiff "was not at imminent risk for a potentially lethal suicide attempt."  (D.E. 48-1, p. 85).  On July 11, 2016, FNP Rodriguez examined Plaintiff, finding no pain on his head with bilateral palpitation, no contusions or dentations on the head, and no evidence of trauma.  (D.E. 48-1, p. 90).  FNP Rodriguez advised Plaintiff to stop hitting his head on any object, changed his medication from Naproxen to Ibuprofen, ordered daily blood pressure checks

for one week, and requested a follow-up appointment in two weeks to re-evaluate Plaintiff's blood pressure.  (D.E. 48-1, p. 91).

Plaintiff, however, refused security escort to the medical department for the ordered blood pressure checks and missed his scheduled follow-up appointment with a medical provider on July 22, 2019.  (D.E. 48-1, pp. 6, 92-95).  Defendant Carrizales, who is a Correctional Clinical Associate (CCA) with no medical training, advised PA Echavarry through an email that Plaintiff had missed his July 22, 2019 appointment. (D.E. 48-1, p. 190).  After reviewing the email, PA Echavarry determined that Plaintiff's missed appointment need not be rescheduled.  (D.E. 48-1, p. 191).

On August 3, 2016, FNP Rodriguez saw Plaintiff at the Chronic Care Clinic for hyperlipidemia.  (D.E. 48-1, pp. 101-07).  She performed a complete physical exam on Plaintiff with his result falling within normal limits with the exception of borderline high blood pressure.  (D.E. 48-1, pp. 101-07). Plaintiff indicated that the Naproxen worked better for his pain than Ibuprofen.  (D.E. 48-1, p. 101).  FNP Rodriguez then proceeded to: (1) discontinue Plaintiff's Ibuprofen and prescribe Naproxen; (2) order an EKG and comprehensive blood work; and (3) order weekly blood pressure checks with a follow-up in one month.  (D.E. 48-1, p. 103-07).  On August 12, 2016, Plaintiff was seen by Mental Health Services where: (1) it was determined that Plaintiff was in no imminent risk for a suicide attempt; and (2) he was referred to medical due to his banging his head on August 8, 2016.  (D.E. 48-1, p. 115).

On August 16, 2016, LVN Pfannstiel saw Plaintiff in connection with his head-banging incident.  (D.E. 48-1, pp. 117-18).  LVN Pfannstiel noted that Plaintiff was alert

and orientated, that there was no raised area on the left side of his head, that there was no swelling or tenderness, and that Plaintiff was under no acute distress.  (D.E. 48-1, p. 117). After consulting with RN Chapa, Plaintiff was released back to security.  (D.E. 48-1, p. 118).

## V.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence or evaluate the credibility of witnesses.  *Id.*  Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th

Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  *Caboni*, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  *Anderson*, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense.  *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).  When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law.  *Id.*  Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material

fact concerning the reasonableness of the official's conduct. *Bazan v. Hidalgo County*, 46 F.3d 481, 490 (5th Cir. 2001).

## VI.   DISCUSSION

### A.   Exhaustion

In his summary judgment motion, Defendants seek dismissal of Plaintiff's deliberate indifference claims against them for failure to exhaust his administrative remedies.  (D.E. 48, pp. 8-10).  The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process.  *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).  A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court.  *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).  Because exhaustion is an affirmative defense, inmates are not required to

plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 215 (2006).

The TDCJ provides a two-step procedure for presenting administrative grievances. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam). Step 1 requires the inmate to present an administrative grievance at his unit within fifteen days from the date of the complained-of incident. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The inmate should then receive a response from the unit official, and if unsatisfied with the response, the inmate has fifteen days to appeal by filing a Step 2 grievance, which is handled at the state level. *Id.* The Fifth Circuit requires that both steps be completed in order to file suit in federal court. *Id* at 515-16 ("[A] prisoner must pursue a grievance through both steps for it to be considered exhausted."). *See also Dillion v. Rogers,* 596 F.3d 260, 268 (5th Cir. 2010) ("under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly.").

Defendants contends that Plaintiff has not filed any Step 2 grievances with respect to his allegations against them in order to complete the administrative process successfully. (D.E. 48, p. 10). The undersigned agrees. A review of Plaintiff's grievance records submitted by Defendants reveals that Plaintiff has not filed any Step 2 grievances complaining about the actions taken by Defendants. (D.E. 48-2).

Plaintiff has come forward with no evidence to establish a genuine issue of material fact as to whether he successfully exhausted his administrative remedies as to his deliberate indifference claims against Defendants. Thus, even when viewing the

competent summary judgment in a light most favorable to Plaintiff, Plaintiff failed to exhaust his claims against Defendant through both steps of the TDCJ grievance process. Furthermore, no evidence has been presented to excuse exhaustion.   Accordingly, Defendants are entitled to summary judgment in their favor and dismissal of Plaintiff's deliberate indifference claims against them with prejudice for lack of exhaustion.[2]

### A.    Deliberate Indifference and Qualified Immunity

Even assuming Plaintiff successfully exhausted his administrative remedies, Defendants alternatively move for summary judgment as to Plaintiff's deliberate indifference claims on the grounds they are entitled to qualified immunity.  (D.E. 48, pp. 4-8).  The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.   *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).  To discharge this burden, the plaintiff must satisfy a two-prong test.  *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251-52 (5th Cir. 2005).   First, he must claim that the defendants committed a

---

[2] A dismissal for failure to exhaust is generally without prejudice.  However, because any new grievance filed by Plaintiff would be time-barred under the TDCJ's grievance procedure and the failure to exhaust cannot be cured, dismissal with prejudice is appropriate in this case. *See Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) (holding that dismissal with prejudice warranted when administrative relief is time barred or otherwise precluded).

constitutional violation under current law.  *Id.* (citation omitted).  Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established when the violation occurred.  *Id.; Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).  While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory.  *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

### A.  Step 1 – Constitutional Violation

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation omitted).  A prison official violates this duty when by act or omission he is deliberately indifferent to prison conditions which pose a substantial risk of serious harm.  *Id.* at 834.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that prison officials acted with deliberate indifference to serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).  Deliberate indifference requires that prison officials both be aware of specific facts from which the

inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act. *Farmer*, 511 U.S. at 837.

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). "A disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference, but the denial of recommended medical treatment is often sufficient to show deliberate indifference." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm.*" *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (emphasis in original).

"Deliberate indifference is an "extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). Furthermore, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012).

Defendants contend in their summary judgment motion that Plaintiff received medical attention on numerous occasions by them and by various medical and mental health providers.  (D.E. 48, p. 6).  Defendants further contend that Plaintiff's complaints amount to nothing more than a disagreement about the treatment received, which fails to state a deliberate indifference claim.  (D.E. 48, pp. 6-7).

The uncontroverted medical records presented in this case show that: (1) Plaintiff banged his head against a wall on June 7, 2016 and August 8, 2016 (D.E. 48-1, p. 4); (2) LVN Antu saw Plaintiff one day after he submitted a sick call request on June 27, 2016, complaining of headaches and a pain in his head (D.E. 48-1, p. 71); (3) Plaintiff stated that he did not have a headache at the time of his examination on June 28, 2016 (D.E. 48-1, p. 72); (4) after finding nothing remarkable and consulting with the charged nurse, LVN Antu released Plaintiff with instructions "to continue to drink plenty of fluids and notify nursing if he should develop the problem again" (D.E. 48-1, p. 72); (5) at the time LVN Antu examined Plaintiff, he had a current and active prescription for the pain medication Naproxen (D.E. 48-1, p. 5); (6) on July 4, 2016, three days after Plaintiff submitted a sick call request, LVN Crumbliss thoroughly examined Plaintiff, found no significant abnormalities, and determined that no treatment was indicated after consulting with RN Snyder (D.E. 48-1, p. 75-83); (7) the nursing notes revealed that Plaintiff had been referred to both a medical provider and a mental health provider (D.E. 48-1, p. 81); (8) on August 16, 2016, LVN Pfannstiel saw Plaintiff in connection with his head-banging incident on August 8, 2016 (D.E. 48-1, pp. 117-18); (9) LVN Pfannstiel noted that Plaintiff was alert and orientated, that there was no raised area on the left side of his

head, that there was no swelling or tenderness, and that Plaintiff was under no acute distress (D.E. 48-1, p. 117); and (10) after consulting with RN Chapa, Plaintiff was released back to security.  (D.E. 48-1, p. 118).

The objective medical evidence further shows that Plaintiff was examined by FNP Rodriguez on July 5, 2016.  With regard to this examination, FNP Rodriguez found no evidence of head trauma, provided instructions to Plaintiff, changed Plaintiff's pain medication, ordered daily blood pressure checks, and requested a follow-up appointment in two weeks.  (D.E. 48-1, pp. 90-91).

In contrast to the significant medical attention provided to Plaintiff by Defendants and FNP Rodriguez, the objective medical evidence shows that Plaintiff refused security escort to the medical department for the ordered blood pressure checks and missed his scheduled follow-up appointment with a medical provider on July 22, 2019.  (D.E. 48-1, pp. 6, 92-95).  Plaintiff complains that Defendant Carrizales, a CCA with no medical training, advised PA Echavarry through an email that Plaintiff had missed his July 22, 2019 appointment and that PA Echavarry determined that Plaintiff's missed appointment need not be rescheduled (D.E. 48-1, p. 190-91).   Nevertheless, the uncontroverted evidence reveals that Plaintiff was seen by FNP Rodriguez on August 3, 2016, who performed a complete physical exam on Plaintiff, changed Plaintiff's prescription back to the original pain medication, ordered an EKG and comprehensive blood work, and ordered weekly blood pressure checks with a follow-up in one month.  (D.E. 48-1, p. 101-07).  Mental Health Services examined Plaintiff on August 12, 2016 and found no

indication that Plaintiff was in imminent danger of committing suicide.  (D.E. 48-1, p. 115).

While Plaintiff generally challenges the lack of adequate and timely medical care in addressing his head injuries and pain, he has presented no evidence to show that he suffered any harm, much less "substantial harm," by any delays in being seen by Defendants or other medical staff.  *See Cudjo v. Hammond*, No. 6:15-CV-1162, 2018 WL 2709442, at *7 (E.D. Tex. Apr. 26, 2018) (holding that prisoner had failed to establish a deliberate indifference claim due to his failure to demonstrate "substantial harm," other than severe pain, from a delay in receiving pain medication for migraine headaches). Plaintiff has presented no evidence to suggest that his head injuries or pain levels progressively worsened over this time frame.  Indeed, as noted above, the objective medical evidence fails to show any abnormalities with his head or uncontrolled pain levels.

At best, Plaintiff's allegations and claims reveal his frustration at his perceived lack of medical attention provided to him for his head injuries suffered on June 7, 2016 and August 8, 2016.  Nevertheless, the competent summary judgment evidence reflects that his medical complaints were not ignored by Defendants and other medical staff, that he received significant medical care for his medical issues, and that any delays in seeing medical staff did not result in any substantial harm.  *Easter*, 467 F.3d at 464*; Gobert*, 463 F.3d at 346.  Plaintiff's frustration and his disagreement with the overall course of the medical treatment and care afforded to him are insufficient to state a § 1983 claim.  *See Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001); *Johnson v. Treen*, 759 F.2d 1236,

1238 (5th Cir. 1985).   Thus, even when taking as true the evidence in a light most favorable to Plaintiff, the uncontroverted summary judgment evidence demonstrates that Plaintiff has failed to state an Eighth Amendment claim of deliberate indifference against Defendants.

###    B.    *Step 2 – Objective reasonableness*

Because plaintiff has failed to state a constitutional violation as to Defendants sued in their individual capacities, it is unnecessary to examine whether their actions were reasonable.   *See Saucier*, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).   Thus, it is respectfully recommended that Defendants be granted summary judgment in their favor as to Plaintiff's deliberate indifference claims and that such claims be dismissed with prejudice.

## VII.   CONCLUSION

Plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1983 prior to filing suit and there are no circumstances to excuse exhaustion.   Thus, it is respectfully recommended that Defendants' Motion for Summary Judgment (D.E. 48) be GRANTED   and   that   Plaintiff's   deliberate   indifference   claims   against   them   be DISMISSED   with   prejudice   for   failure   to   exhaust.   Alternately,   Defendants   have demonstrated that no genuine issue of a material fact exists as to their entitlement to qualified immunity, and it is respectfully recommended that the Motion for Summary Judgment (D.E. 48) be GRANTED and that Plaintiff's deliberate indifference claims

against Defendants be DISMISSED with prejudice.   Lastly, it is respectfully recommended further that Plaintiff's Motion for an Injunction (D.E. 60) be DENIED.

Respectfully submitted this 17th day of December, 2019.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.   *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).